UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE: EXTENDING AUTHORIZATION FOR CONDUCTING CERTAIN CRIMINAL HEARINGS BY VIDEO TELECONFERENCE OR TELEPHONE CONFERENCE UNDER THE CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT (CARES ACT), H.R. 748

General Order No. 23-1

---

**GENERAL PUBLIC ORDER REGARDING COVID-19 VIRUS PUBLIC EMERGENCY—EXTENDING AUTHORIZATION FOR CONDUCTING CERTAIN CRIMINAL HEARINGS BY VIDEO TELECONFERENCING OR TELEPHONE CONFERENCING UNDER THE CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT (CARES ACT), H.R. 748**

---

On March 27, 2020, the President of the United States signed into law the Coronavirus Aid, Relief, and Economic Security Act, (CARES Act), H.R. 748 (2020). Section 15002(b) of that Act provides for video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available, for certain criminal proceedings if the Judicial Conference of the United States finds that emergency conditions caused by the COVID-19 outbreak will materially affect the functioning of either the federal courts generally or a particular district court, and the chief judge of a court covered by that finding authorizes video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available.

On March 29, 2020, on the joint recommendation of the chairs of the Committee on Court Administration and Case Management and the Committee on Rules of Practice and Procedure, the Judicial Conference of the United

1

States found, under the CARES Act, that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. §§1601, *et seq.*) with respect to COVID-19 have materially affected and will materially affect the functioning of the federal courts generally.

That same day—March 29, 2020—the undersigned issued General Order 20-6, authorizing the use of video teleconferencing, or telephone conferencing if video teleconferencing was not reasonably available, for the following events listed in Section 15002(b)(1) of the CARES Act:

- Detention hearings under 18 U.S.C. §3142;
- Initial appearances under Fed. R. Crim. P. 5;
- Preliminary hearings under Fed. R. Crim. P. 5.1;
- Waivers of Indictment under Fed. R. Crim. P. 7(b);
- Arraignments under Fed. R. Crim. P. 10;
- Probation and supervised revocation proceedings under Fed. R. Crim. P. 32.1;
- Pretrial release revocation proceedings under 18 U.S.C. §3148;
- Removal proceedings under Fed. R. Crim. P. 40;
- Misdemeanor pleas and sentencings under Fed. R. Crim. P. 43(b)(2); and
- Proceedings under 18 U.S.C. §403 (commonly known as the "Federal Juvenile Delinquency Act"), except for contested transfer hearings and juvenile delinquency adjudication or trail proceedings.

The undersigned ordered that under Section 15002(b)(4), the video teleconferencing or telephone conferencing authorized above could take place only with the consent of the defendant, or the juvenile, after consultation with counsel.

As chief judge, and under Section 15002(b)(2), the undersigned also specifically found that felony pleas under Fed. R. Crim. P. 11 and felony

sentencings under Fed. R. Crim. P. 32 could not be conducted in person without seriously jeopardizing public health and safety. The undersigned ordered that if the district judge in a particular case found, for specific reasons, that a felony plea or sentencing in that case could not be further delayed without serious harm to the interests of justice, that judge could, with the consent of the defendant after consultation with counsel, conduct the felony plea or sentencing by video teleconference, or by telephone conference if video teleconferencing was not reasonably available.

Under Section 15002(b)(3) of the CARES Act, the undersigned ordered that the authorization issued on March 29, 2020 remained in effect for ninety (90) days unless terminated earlier as described in Section 15002(b)(5). The undersigned ordered that if the emergency authority had not been terminated ninety (90) days from the entry of the order, the undersigned would review the authorization and determine whether to extend it. Since then, the undersigned has issued eleven orders extending the authorization, each time for ninety (90) days: on June 24, 2020; on September 22, 2020; on December 18, 2020; on March 16, 2021; on June 11, 2021; on September 7, 2021; on December 3, 2021; on March 2, 2022; on May 27, 2022; on August 23, 2022; and on November 17, 2022.

As of February 14, 2023—two years and ten and a half months from the date the undersigned issued General Order 20-6—the emergency authority has not been terminated. On February 24, 2021, the President notified Congress that the pandemic continues to cause significant risk to the public health and

safety of the nation. On February 26, 2021, the President published formal notice in the Federal Register continuing the national emergency concerning COVID-19. https://www.federalregister.gov/documents/2021/02/26/2021-04173/continuation-of-the-national-emergency-concerning-the-coronavirus-disease-2019-covid-19-pandemic. On February 18, 2022, the President again notified Congress that COVID-19 continues to cause significant risk to the public health and safety of the nation and continued the national emergency beyond March 1, 2022. On February 23, 2022, the President published formal notice in the Federal Register continuing the national emergency concerning COVID-19. https://www.federalregister.gov/documents/2022/02/23/2022-03972/continuation-of-the-national-emergency-concerning-the-coronavirus-disease-2019-covid-19-pandemic.

On January 30, 2023, the White House issued a Statement of Administration Policy. The Statement noted that the COVID-19 national emergency and public health emergency were set to expire on March 1 and April 11, 2023, respectively, and indicated that "[a]t present," the Administration planned to extend the declarations to May 11, 2023, "and then end both emergencies on that date." https://www.whitehouse.gov/omb/statements-of-administration-policy/ ("H.R. 381—A bill to terminate the public health emergency declared with respect to COVID-19, H.J. Res. 7—A joint resolution relating to a national emergency declared by the President on March 13, 2020"). The Statement expressed the opinion that abruptly ending the emergency declarations "would have two highly significant impacts on our

nation's health system and government operations." Id. The Statement indicated that the Administration strongly opposed the enactment of two bills that proposed to end the emergencies sooner. Id.

Thus, as of February 2023, the national emergency concerning COVID-19 continues, and appears likely to continue through at least May 11, 2023.

On March 29, 2020—the date the undersigned issued the original authorization—there had been 1,112 confirmed cases of COVID-19 in the state of Wisconsin; as of February 9, 2023, there have been over 1,987,650 cases, with over 16,216 deaths. https://www.nytimes.com/interactive/2021/us/wisconsin-covid-cases.html. Nationwide there have been over 102,374,000 confirmed cases and 1,118,500 deaths. https://www.nytimes.com/interactive/2021/us/covid-cases.html. In late November 2022, when the court last extended the CARES Act authorization, Wisconsin's seven-day average percentage of positive results by test was 8.1%; as of February 8, 2023, that percentage had increased slightly to 8.9%. The number of confirmed cases has been relatively flat in the past year. The percentage of hospital beds in use for COVID patients as of November 15, 2022 was 74.7%; as of late January 2023 it was 74.6%. ICU beds are down from 74.9% as of November 15, 2022 to 70.9% capacity in late January 2023. https://www.dhs.wisconsin.gov/covid-19/hosp-data.htm.

The Wisconsin Department of Health Services continues to advise citizens to get vaccinated and stay up to date with vaccine recommendations, stay home when sick, get tested when experiencing symptoms or after having

been exposed, seek treatment if diagnosed with the virus and improve ventilation whenever possible. When the community transmission level is high, the DHS recommends wearing a mask in all public indoor settings, regardless of vaccination status, and considering additional precautions such as socially distancing and avoiding indoor gatherings. https://www.dhs.wisconsin.gov/covid-19/community.htm. The Centers for Disease Control and Prevention make similar recommendations. https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

As of February 8, 2023, 65.8% of Wisconsin residents had received at least one dose of vaccine and 61.8% had been fully vaccinated; 19.6% of the total population had received the most recent, updated booster. https://www.dhs.wisconsin.gov/covid-19/data.htm. Home COVID self-tests are widely available and are covered by many insurance plans. There are new treatments for the disease and work is proceeding on new vaccines and variant-specific boosters. But the state continues to see new infections and COVID deaths. A significant percentage of the state's citizens are not vaccinated. "Breakthrough" infections are common among vaccinated, or vaccinated and boosted, persons as new variants surge; over the summer of 2022 the BA.5 variant had become the dominant strain, but two other subvariants—BQ.1.1 and BQ.1—appear better able to evade immune systems and are responsible for the larger percentage of new COVID cases. https://www.nbcnews.com/health/health-news/new-coronavirus-subvariants-surpass-ba5-dominance-rcna57294. While vaccines remain a powerful tool in slowing the spread of the virus and in

reducing the likelihood of severe illness if infected, the vaccines may not be as effective in fending off new variants, id., and vaccinated and boosted persons frequently are infected and become ill.

In the past thirty-five months, courts in the Eastern District of Wisconsin have closed buildings to the public, implemented teleworking and made liberal use of the CARES Act authority to hold hearings via videoconference and telephone conference. They have cautiously reopened buildings under restrictions regarding masks and social distancing. They have cautiously resumed jury trials, with restrictions. Prisons and jails, too, have implemented protocols, many requiring detainees and incarcerated persons to quarantine for up to two weeks after returning from an in-person court proceeding.

While many organizations, including the courts, have eased restrictions significantly, the pandemic continues to materially affect the functioning of the courts and requires that the courts continue to rely on the ability to conduct hearings remotely via videoconference or telephone conference to protect the health and safety of all court users. Judges, lawyer, parties and other participants in the court process who have been exposed and infected but who are not severely ill still seek to protect others but keep cases and practices moving by appearing by videoconference. Incarcerated persons who would be subject to quarantine after appearing in person for a hearing seek to appear by videoconference to avoid being placed in segregation. Staffing shortages persist at jails and prisons.

Under §15002(b)(3)(A), the undersigned has reviewed the March 29,

2020, June 24, 2020, September 22, 2020, December 18, 2020, March 15, 2021, June 11, 2021, September 7, 2021, December 3, 2021, March 2, 2022, May 27, 2022, August 23, 2022 and November 17, 2022 authorizations, and has determined for the above reasons that re-authorization for another ninety (90) days is warranted and necessary. Accordingly, the undersigned extends the authorization of courts in the Eastern District of Wisconsin to utilize video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available, for the following events listed in Section 15002(b)(1) of the CARES Act:

- Detention hearings under 18 U.S.C. §3142;
- Initial appearances under Fed. R. Crim. P. 5;
- Preliminary hearings under Fed. R. Crim. P. 5.1;
- Waivers of Indictment under Fed. R. Crim. P. 7(b);
- Arraignments under Fed. R. Crim. P. 10;
- Probation and supervised revocation proceedings under Fed. R. Crim. P. 32.1;
- Pretrial release revocation proceedings under 18 U.S.C. §3148;
- Removal proceedings under Fed. R. Crim. P. 40;
- Misdemeanor pleas and sentencings under Fed. R. Crim. P. 43(b)(2); and
- Proceedings under 18 U.S.C. §403 (commonly known as the "Federal Juvenile Delinquency Act"), except for contested transfer hearings and juvenile delinquency adjudication or trail proceedings.

Under Section 15002(b)(4), the video teleconferencing or telephone conferencing authorized above may take place only with the consent of the defendant, or the juvenile, after consultation with counsel.

As chief judge, and under Section 15002(b)(2), the undersigned specifically finds that felony pleas under Fed. R. Crim. P. 11 and felony sentencings under Fed. R. Crim. P. 32 cannot be conducted in person without

8

seriously jeopardizing public health and safety. If the district judge in a particular case finds, for specific reasons, that a felony plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice, that judge may, with the consent of the defendant after consultation with counsel, conduct the felony plea or sentencing by video teleconference, or by telephone conference if video teleconferencing is not reasonably available.

Under Section 15002(b)(3) of the CARES Act, the undersigned orders that this extended authorization remains in effect for ninety (90) days unless terminated earlier as described in Section 15002(b)(5). If the emergency authority has not been terminated ninety (90) days from the entry of the order, the undersigned will review the authorization and determine whether to extend it.

Dated in Milwaukee, Wisconsin this 14th day of February, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**